JUDGE SULLIVAN

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Donald Haynes

# 17 CV 5850

_____
Write the full name of each plaintiff.

_____CV_____
(Include case number if one has been assigned)

-against-

John Kolk, Peter Miller, Joseph Madden,
Department Of Homeland Security
Transportation Security Administration

_____

_____
Write the full name of each defendant. The names listed
above must be identical to those contained in Section I.

Do you want a jury trial?

☒ Yes   ☐ No

# EMPLOYMENT DISCRIMINATION COMPLAINT

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

## I.    PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Donald | A | Haynes |
|--------|---|--------|
| First Name | Middle Initial | Last Name |

32 Lawrence Place
_____
Street Address

| Chestnut RIdge | New York | 10977-6416 |
|----------------|----------|------------|
| County, City | State | Zip Code |

| (H)845-352-9047(C)845-323-3287 | Ertccty1@aol.com |
|--------------------------------|------------------|
| Telephone Number | Email Address (if available) |

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:    John Kolk
_____
            Name
            75-20 Astoria Blvd   Suite 300
            _____
            Address where defendant may be served

| East Elmurst | New York | 11370 |
|--------------|----------|-------|
| County, City | State | Zip Code |

Defendant 2:    Peter Miller
_____
            Name
            75-20 Astoria Blvd  Suite 300
            _____
            Address where defendant may be served

| East Elmhurst | New York | 11370 |
|---------------|----------|-------|
| County, City | State | Zip Code |

Defendant 3:

Joseph Madden
_____
Name

75-20 Astoria Boulevard   Suite 300
_____
Address where defendant may be served

East Elmhurst              New York        11370
_____
County, City               State            Zip Code

## II.   PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

LaGuardia International Airport
_____
Name

32 Lawrence Place
_____
Address

East Elmhurst              New York        11370
_____
County, City               State            Zip Code

## III.   CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐  **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐  race: _____

☐  color: _____

☐  religion: _____

☐  sex: _____

☐  national origin: _____

Page 3

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is: _____

☒ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

**B.   Other Claims**

In addition to my federal claims listed above, I assert claims under:

☐ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☐ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ **Other** (may include other relevant federal, state, city, or county law):

_____

## IV.   STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐  did not hire me
- ☒  terminated my employment
- ☐  did not promote me
- ☐  did not accommodate my disability
- ☐  provided me with terms and conditions of employment different from those of similar employees
- ☐  retaliated against me
- ☐  harassed me or created a hostile work environment
- ☒  other (specify):   Gave false statement to two different federal agencies regarding injury.

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

The three defendants lied to Plantiff in order to get Plantiff to a unsanctioned (union was not present and should have been) and then lied to two different federal agencies regarding both the content of the meeting and actually summoned the Plantiff to the unauthorized meeting. The three defendants also refused to turn over the video evidence of the day and are only showing the last three hours when during the meeting and on the paperwork submitted for the injury stated unknown. Plantiff recorded the meeting and none of majority of the things that the defendants claimed happened at the meeting did not. The contents of the meeting plus the injury and the not being able to work due to injury was the cause for termination.

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.   ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

      ☒ Yes (Please attach a copy of the charge to this complaint.)

           When did you file your charge?   July 25, 2013

      ☐ No

Have you received a Notice of Right to Sue from the EEOC?

      ☒ Yes (Please attach a copy of the Notice of Right to Sue.)

           What is the date on the Notice?   April 28, 2017

           When did you receive the Notice?   May 3, 2017

      ☐ No

## VI.   RELIEF

The relief I want the court to order is (check only those that apply):

      ☐ direct the defendant to hire me

      ☒ direct the defendant to re-employ me

      ☐ direct the defendant to promote me

      ☐ direct the defendant to reasonably accommodate my religion

      ☒ direct the defendant to reasonably accommodate my disability

      ☒ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)
      Pay lost wages(was not paid for six months prior to termination), pay medical bills which went into collections, pay bills that went into collections, pay for physical therapy,  pay possible punitive damages.

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are
supported by existing law or by a nonfrivolous argument to change existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal
Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I
understand that my failure to keep a current address on file with the Clerk's Office may
result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to
proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 07/31/2017 | | | |
| --- | --- | --- | --- |
| Dated | | Plaintiff's Signature | |
| **Donald** | **A** | **Haynes** | |
| First Name | Middle Initial | Last Name | |
| **32 Lawrence Place** | | | |
| Street Address | | | |
| **Chestnut Ridge** | | **New York** | **10977-6416** |
| County, City | | State | Zip Code |
| **(H)845-352-9047/(C)845-323-3287** | | **Ertccty1@aol.com** | |
| Telephone Number | | Email Address (if available) | |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes    ☐ No

   If you do consent to receive documents electronically, submit the completed form with your
   complaint. If you do not consent, please do not attach the form.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P.O. Box 77960
Washington, DC 20013

Donald Haynes, a/k/a
Floyd C.,[1]
Complainant,

v.

John F. Kelly,
Secretary,
Department of Homeland Security
(Transportation Security Administration),
Agency.

Appeal No. 0120151180

Hearing No. 520-2014-00281X

Agency No. HS-TSA-01672-2013

DECISION

Complainant timely filed an appeal, pursuant to 29 C.F.R. § 1614.403(a), from the Agency's final order concerning his equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq., Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq., and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 et seq. For the following reasons, the Commission AFFIRMS the Agency's final order.

ISSUES PRESENTED

The issues presented are: (1) whether there are genuine issues of material fact that require a hearing before an Equal Employment Opportunity Commission Administrative Judge (AJ); and (2) whether Complainant established that the Agency's proffered explanation for its actions was pretext to mask discrimination based on his protected classes.

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

## BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Transportation Security Officer (TSO) at the LaGuardia International Airport (LGA) in New York. Report of Investigation (ROI), at Ex. B-1. Complainant worked the shift between 4:00am a.m. and 12:30 p.m. at the Delta terminal at LGA. Complainant was hired as a TSO with the Agency on May 8, 2011, and was initially assigned to the Newark Liberty International Airport in New Jersey before being reassigned at his request to the LGA. Id. at F-1. Complainant worked under the Agency's two-year probationary policy for new hires.

On September 2, 2012, the Agency issued Complainant a "Letter of Counseling for Use of Unscheduled Leave." Id. at F-10. Therein, the Agency counseled Complainant that from August 14, 2011, through August 12, 2012, he had used a total of 32 hours of sick leave during that year. Id. The letter also warned that any future work attendance issues could result in disciplinary action, including termination. Id.

Weeks later, on September 22, 2012, Complainant for the first time notified the Agency that he had been injured on September 18, 2012, at approximately 11:30 am during his shift that day. Id. at F-12. Complainant specifically reported that he sprained a muscle when he lifted an empty stack of the grey plastic bins used for screening passenger's belongings. The same day, September 22, 2012, the Agency presented Complainant with a limited duty assignment as an Exit Lane Monitor, which Complainant accepted. F-13. The duty description for Complainant's limited duty assignment described Complainant's Exit Lane Monitoring duties as visually monitoring exit points, which required walking periodically using a hand held radio weighing 1.5 pounds. Id.

On September 24, 2012, Complainant met with the Agency's Human Resources (HR) Specialist and reiterated that he was injured on September 18, 2012, when he "lifted a large stack of bins around 11:30 [a.m.]." Id. at F-34. The same day, Complainant filed a worker's compensation claim with the Department of Labor, Office of Workers Compensation Programs (OWCP). Id. at F-18. Therein, Complainant wrote that he sprained his trapezoid muscle on September 18, 2012, at approximately 11:30 am. Id. On September 25, 2012, Complainant further reported to the Transportation Security Manager that while working in the main terminal of Delta on September 18, 2012, he lifted an "extremely large" stack of the grey plastic bins. Complainant reported that after putting the bins in the blue bin cart, he "felt a little sharp pain in his right chest and back." Id. at F-11.

On September 27, 2012, Complainant received a letter from the OWCP, noting:

> Your employing agency is challenging your claim. They stated that video was viewed from 10:00 am to 12:30 pm on 09/18/12 and that the injury described was not seen.

Id. at F-19.

Meanwhile, during Complainant's assignment to his limited duty position, Complainant apparently took leave in excess of 12 separate days from September 22, through November 7, 2012, because of alleged pain associated with his injury. Complainant believed that he was routinely assigned tasks outside of his limited duty assignment, including pushing wheel-chair bound passengers, moving up and down from a seated position, and lifting items greater than the amount contained in his limited duty description. Id. at F-22.

On November 8, 2012, Complainant stopped reporting for duty because of his asserted pain due to the injury he suffered on September 18, 2012, and other apparent injuries he suffered while working in his limited duty position. Thereafter, on November 15, 2012, the OWCP granted Complainant's claim for traumatic injury, noting that Complainant may be eligible for Continuation of Pay (COP) until he recovers from his injury. Id. at F-21. On November 27, 2014, Complainant filed a Notice of Recurrence with the OWCP based on alleged injuries he sustained while working in his limited duty position. Id. at F-22.

Subsequently, on February 4, 2013, in a letter to the OWCP, the HR Specialist wrote that Complainant never reported to management that his duties as an Exit Lane Monitor were causing him problems. Id. F-31. The HR Specialist further wrote that Complainant stopped reporting for work October 12, 2012, but did not advise management that he could not report to work due to injury until October 23, 2012. Id. The HR Specialist additionally indicated that Complainant's medical documentation dated October 18, 2012, noted that Complainant engages in "weight training" as an exercise. Id. In further attempting to discredit Complainant's injury, the HR Specialist noted that Complainant provided a different account of his September 18, 2012, injury in his doctor's report to the OWCP wherein he instead claimed that he "was lifting up a heavy box at work when he felt a twinge in his wrist and subsequently dropped the box." Id. The HR Specialist further wrote that video footage for September 18, 2012, only showed that Complainant lifted a small stack of bins without effort or incidence, and Complainant's medical documentation does not state why he was unable to perform his limited duty assignment after October 9, 2012. Id. The HR Specialist also notified the OWCP in the letter that although Complainant claimed that one of his recurring injuries happened on November 8, 2012, payroll records reflected that Complainant was actually not at work that day. Id. The HR Specialist lastly wrote that Complainant's medical documentation does not offer a medical rationale as to why Complainant could not return to work after November 8, 2012. Id.

In a meeting with the HR Specialist and the Program Analyst on February 5, 2013, Complainant continued to maintain that he was injured on September 18, 2012. During the meeting, Complainant described the bins that he had to lift as being over four feet in height. Id. at F-51. However, during the meeting, the HR Specialist reportedly told Complainant that his injury never happened and he did not have an excuse for continually being absent from work. Id. at F-1. On February 12, 2013, the HR Specialist sent another letter to the OWCP requesting that Complainant's injury claims be denied. Id. at F-34.

Thereafter, on March 18, 2013, the OWCP denied Complainant's recurrence injury claims that he allegedly sustained during his limited duty assignment. Id. at F-38. As a result, on April 5, 2013, the Assistant Federal Security Director sent Complainant a letter, writing that based on the OWCP's denial of his injury recurrence claims, Complainant would be marked in Absent without Leave (AWOL) status from November 9, 2012, through the present. Id. at F-52. On April 8, 2013, the OWCP notified Complainant of its proposal to rescind its November 7, 2012, acceptance of his September 18, 2012, reported injury. Id. at F-40.

The next day, on April 9, 2013, the Assistant Federal Security Director mailed Complainant a Notice of Termination. Id. at F-52. The Termination found that Complainant misrepresented his alleged September 18, 2012, injury. Id. Therein, the Assistant Federal Security Director noted that Complainant claimed to have been injured by lifting a stack of bins approximately four feet in height, but video footage only showed that Complainant lifted one stack of small bins during this period, approximately one foot in height. The Assistant Federal Security Director further cited Complainant with unsatisfactory attendance, noting that since September 22, 2012, Complainant requested leave on 122 occasions. The Assistant Federal Security Director also noted that Complainant was previously issued a Letter of Counseling on September 2, 2012, for the use of excessive unscheduled leave.

On July 25, 2013, Complainant filed an EEO complaint alleging that the Agency discriminated against him on the basis of disability, race (African-American), and age when he was terminated from his Transportation Security Officer position effective April 11, 2013.

At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation and notice of his right to request a hearing before an Equal Employment Opportunity Commission Administrative Judge (AJ). Complainant timely requested a hearing. Over Complainant's objections, the AJ assigned to the case granted the Agency's August 15, 2014, motion for a decision without a hearing and issued a decision without a hearing on December 1, 2014. The Agency subsequently issued a final order adopting the AJ's finding that Complainant failed to prove that the Agency subjected him to discrimination as alleged.

Specifically, the AJ found that Complainant did not show that his alleged physical impairment substantially limited a major life activity, and therefore he failed to establish a prima facie case of discrimination based on his disability. The AJ further found that the Agency articulated legitimate, nondiscriminatory reasons for his termination, which Complainant did not establish were pretext for discrimination. In so finding, the AJ noted that Complainant did not dispute his poor attendance record. The AJ also noted that although management officials may have interfered with his injury claims before the OWCP, the Commission has held that such a claim constitutes a collateral attack on the worker's compensation process. The AJ further found no evidence that any of management's actions were due to Complainant's race, sex, or age.[2]

---

[2] The AJ lists sex as one of Complainant's alleged protected bases; however, sex was not accepted as an alleged basis by the Agency.

## CONTENTIONS ON APPEAL

### *Complainant's Brief on Appeal*

On appeal, Complainant, through his attorney, contends that the AJ failed to allow him the opportunity to conduct discovery before he issued his decision without a hearing. Complainant specifically asserts that he appeared and represented himself at the May 2, 2014, prehearing conference. Complainant asserts that following the prehearing conference, the AJ issued an order that established unilateral discovery deadlines for the Agency to conduct discovery. Complainant maintains that the AJ's Order was silent with respect to his ability to conduct discovery. Complainant states that after he retained counsel, he filed a Motion for Leave to Conduct Written Discovery and Depositions. Complainant however asserts that the AJ denied this motion in his Decision without a Hearing, and therefore he did not have the opportunity to conduct discovery.

Complainant maintains that the AJ's discovery order was extremely prejudicial because the order did not provide him any opportunity secure necessary evidence for him to meet his burden of proof. In so asserting, Complainant argues that key pieces of evidence are missing from the record, including a complete copy of the surveillance video from his eight hour shift on September 18, 2012. Complainant also asserts that comparator evidence is missing from the record, which would enable him to establish discrimination based on his race and age. Complainant maintains that the investigative record is incomplete herein.

In arguing that the AJ erred in failing to find evidence of pretext, Complainant contends, in pertinent part, that any finding that he misrepresented his injury is not supported by the facts in the record. Complainant maintains that his stated time of injury of 11:30am was only an approximation, and the Agency only viewed the surveillance video from 10:00am through 12:30pm. Complainant argues that the surveillance video for his entire shift, 4:00am to 12:30pm should have been viewed and made available for the record. In addition, Complainant asserts that physicians diagnosed him with a back sprain/strain, so he was clearly credible about his injury. Complainant further maintains that he did not provide inconsistent statements regarding his September 18, 2012, injury. Lastly, Complainant contends that the Assistant Federal Security Director claimed he did not have knowledge of his race or age, but had face-to-face interactions with him.

## STANDARD OF REVIEW

In rendering this appellate decision we must scrutinize the AJ's legal and factual conclusions, and the Agency's final order adopting them, de novo. See 29 C.F.R. § 1614.405(a) (stating that a "decision on an appeal from an Agency's final action shall be based on a de novo review . . ."); see also Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9, § VI.B. (Aug. 5, 2015) (providing that an administrative judge's determination to issue a decision without a hearing, and the decision itself, will both be

reviewed de novo). This essentially means that we should look at this case with fresh eyes. In other words, we are free to accept (if accurate) or reject (if erroneous) the AJ's, and Agency's, factual conclusions and legal analysis -- including on the ultimate fact of whether intentional discrimination occurred, and on the legal issue of whether any federal employment discrimination statute was violated. See id. at Chapter 9, § VI.A. (explaining that the de novo standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

## ANALYSIS AND FINDINGS

*Summary Judgment*

We must determine whether it was appropriate for the AJ to have issued a decision without a hearing on this record. The Commission's regulations allow an AJ to issue a decision without a hearing when he or she finds that there is no genuine issue of material fact. 29 C.F.R. § 1614.109(g). This regulation is patterned after the summary judgment procedure set forth in Rule 56 of the Federal Rules of Civil Procedure. The U.S. Supreme Court has held that summary judgment is appropriate where a court determines that, given the substantive legal and evidentiary standards that apply to the case, there exists no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In ruling on a motion for summary judgment, a court's function is not to weigh the evidence but rather to determine whether there are genuine issues for trial. Id. at 249. The evidence of the non-moving party must be believed at the summary judgment stage and all justifiable inferences must be drawn in the non-moving party's favor. Id. at 255. An issue of fact is ""genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). A fact is "material" if it has the potential to affect the outcome of the case.

If a case can only be resolved by weighing conflicting evidence, issuing a decision without holding a hearing is not appropriate. In the context of an administrative proceeding, an AJ may properly consider issuing a decision without holding a hearing only upon a determination that the record has been adequately developed for summary disposition. See Petty v. Dep't of Def., EEOC Appeal No. 01A24206 (July 11, 2003). Finally, an AJ should not rule in favor of one party without holding a hearing unless he or she ensures that the party opposing the ruling is given (1) ample notice of the proposal to issue a decision without a hearing, (2) a comprehensive statement of the allegedly undisputed material facts, (3) the opportunity to respond to such a statement, and (4) the chance to engage in discovery before responding, if necessary. According to the Supreme Court, Rule 56 itself precludes summary judgment "where the [party opposing summary judgment] has not had the opportunity to discover information that is essential to his opposition." Anderson, 477 U.S. at 250. In the hearing context, this means that the administrative judge must enable the parties to engage in the

amount of discovery necessary to properly respond to any motion for a decision without a hearing. Cf. 29 C.F.R. § 1614.109(g)(2) (suggesting that an administrative judge could order discovery, if necessary, after receiving an opposition to a motion for a decision without a hearing).

After a review of the record, the commission finds that the AJ's issuance of a decision without a hearing was appropriate. The record has been adequately developed, Complainant was given notice of the Agency's motion to issue a decision without a hearing, he was given an opportunity to respond, and he was given a comprehensive statement of undisputed fact.

Further, assuming, without finding, that the AJ erred in not properly allowing Complainant the opportunity to conduct discovery, we find that any such error was harmless. We note that Complainant alleged that through discovery he could have obtained the full surveillance video to show that he was in fact injured as he alleged on September 18, 2012. However, as explained below, even assuming the video showed Complainant's alleged injury, the Agency nevertheless immediately reassigned Complainant to the limited duty position as a way to accommodate his injury. Complainant soon thereafter left his limited duty position and did not return. We however find that Complainant has not established a nexus between his alleged injury and his more than three month absence from his limited duty position. Therefore, as explained below, we find that the record is adequately developed. See e.g. Coppola v. Dep't of the Treasury, EEOC Appeal No. 0120090788 (Nov. 4, 2009) (AJ's failure to expressly rule on the Complainant's motion to compel discovery constitutes harmless error where the record is adequately developed). For the reasons discussed below, we find that, even assuming all facts in favor of Complainant, a reasonable fact-finder could not find in his favor.

*Disparate Treatment*

To prevail in a disparate treatment claim, a complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). A complainant must initially establish a prima facie case by demonstrating that she was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Furnco Constr. Co. v. Waters, 438 U.S. 567, 576 (1978). Proof of a prima facie case will vary depending on the facts of the particular case. McDonnell Douglas, 441 U.S. at 804 n. 14. The burden then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). To ultimately prevail, a complainant must prove, by a preponderance of the evidence, that the agency's explanation is a pretext for discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000); St. Mary's Honor Ctr v. Hicks, 509 U.S. 502, 519 (1993).

Upon review, we find that assuming, arguendo, that Complainant established a prima facie case of discrimination based on race, age, and disability, the Agency articulated legitimate, nondiscriminatory reasons for its actions. Namely, that the video surveillance and inconsistent statements by Complainant to OWCP and his doctors, reflected that Complainant

misrepresented his alleged September 18, 2012, injury. The Assistant Federal Security Director also noted that due to his misrepresentation of his injuries, Complainant had been absent from work for on 122 occasions.

The burden now shifts to Complainant to establish that the Agency's nondiscriminatory reasons were pretext for discrimination. Burdine, at 254. Notwithstanding Complainant's contentions, we find that he has not established that the Agency's reasons for his termination were pretext for discrimination. In reaching this conclusion, we find that the record contains inconsistent statements from Complainant concerning his September 18, 2012, injury, as well as his allegation that he was further injured while working his limited duty position. In particular, Complainant reported to the Agency that he received his injury to his chest and back when he lifted the bins on September 18, 2012. Complainant however reported to his doctor that on September 18, 2012, "he was lifting up a heavy box at work when he felt a twinge in his wrist and subsequently dropped the box." ROI, at Ex. F-16. In his claim to the OWCP, Complainant's doctor writes that it was a heavy box that injured Complainant. We also note that Complainant filed a recurrence for an injury with the OWCP that reportedly occurred on November 8, 2012, yet there is no dispute that Complainant was absent from work that day. Id. at F-28, F-46.

Also, there are various inconsistences submitted by Complainant concerning the type of injury he actually suffered. On occasions, he asserted he hurt his chest and back, sometimes he claimed that he hurt his lower back, but at other times it was his upper back. Further, on occasions, he claimed he hurt his wrist, had a torn chest muscle, or hurt his trapezoid muscle. Yet, he then claimed he hurt his shoulder, upper arm, and rotator cuff. We note however that Complainant does not dispute that the bins he lifted on September 18, 2012, were empty and did not contain any luggage, bags, or passenger belongings.

Notwithstanding, even assuming that Complainant sustained these multiple injuries as alleged on September 18, 2012, management nevertheless immediately assigned him to a limited duty position to accommodate him. But Complainant asserted that he had to open and close doors, move garbage bins, and push wheelchair bound passengers on occasions during this limited duty assignment, and therefore could not work this limited duty position. As a result, Complainant remained absent from work until the date of his termination in April 2013.

We note that a complainant who has an excessive amount of absences must show a nexus between the absences and the disability. See Tsai v Fed. Deposit Insur. Corp., EEOC Appeal No. 0120035347 (June 14, 2007); Roscoe v. Dep't of the Navy, EEOC Appeal No. 01974138 (Sept. 21, 2000); Southerland v U.S. Postal Serv., EEOC Request No. 05930714 (July 15, 1994). Here, the medical documentation in the record simply does not reflect that Complainant's alleged September 18, 2012, injury impacted his ability to perform these minor physical functions for his limited duty assignment such that he had to miss work in excess of five months. In so finding, we note that Complainant was treated by an orthopedic surgeon on January 14, 2013, who opined that Complainant most likely only pulled a muscle on September 18, 2012, should have improved three to four months after the injury. ROI, Ex. F-16. The

record further reflects that an occupational medicine specialist reviewed Complainant's medical documentation and opined that it was highly unusual for Complainant's accepted OWCP thoracic sprain claim to persist for such a long period of time. Id. at F-46. We find that Complainant simply has not submitted evidence which would explain his extended absence from his limited duty position. There is simply no nexus between his extended absence from his limited duty position and his injury. See Martinez v. General Serv. Admin., EEOC Appeal No 0120122326 (Nov. 15, 2012) (finding that the medical notes provided by complainant failed to link her alleged disabilities to her use of leave and unscheduled absences); Ricco v. U.S. Postal Serv., EEOC Appeal No. 07A10007 (Feb. 21, 2002) (finding that while complainant requested reasonable accommodation when she requested leave due to her medical condition, she failed to substantiate the causal connection between the disability and the dates of absence at issue in her removal).

There also is on dispute that the OWCP denied Complainant's reoccurrence worker's compensation claims and notified Complainant of its intent to rescind its acceptance of Complainant's claim that he was injured on September 18, 2012. Believing that Complainant had purposefully misrepresented his injuries, the Agency fired him during his probationary period shortly after receiving notice from the OWCP. Therefore, based on the above, we find that Complainant has not established that the Agency was motivated by discriminatory animus based on his race, age, or disability.

To the extent that Complainant believes the Agency interfered in his worker's compensation Claim, we find that the claim constitutes a collateral attack on the worker's compensation process. "The Commission has held that an employee cannot use the EEO complaint process to lodge a collateral attack on another proceeding. See Wills v. Dep't of Defense, EEOC Request No. 05970596 (July 30, 1998); Kleinman v. U.S. Postal Serv., EEOC Request No. 05940585 (Sep. 22, 1994); Lingad v. U.S. Postal Serv., EEOC Request No. 05930106 (June 25, 1993). The proper forum for Complainant to raise his challenges to management's alleged interference with his worker's compensation claim is generally within that proceeding itself.

## CONCLUSION

Based on a thorough review of the record and the contentions on appeal, including those not specifically addressed herein, we AFFIRM the Agency's final order.

### STATEMENT OF RIGHTS - ON APPEAL
### RECONSIDERATION (M0416)

The Commission may, in its discretion, reconsider the decision in this case if the Complainant or the Agency submits a written request containing arguments or evidence which tend to establish that:

1.    The appellate decision involved a clearly erroneous interpretation of material
      fact or law; or

2.    The appellate decision will have a substantial impact on the policies, practices,
      or operations of the Agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of
Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within
twenty (20) calendar days of receipt of another party's timely request for reconsideration. See
29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R.
Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015). All requests and arguments
must be submitted to the Director, Office of Federal Operations, Equal Employment
Opportunity Commission. The requests may be submitted via regular mail to P.O. Box 77960,
Washington, DC 20013, or by certified mail to 131 M Street, NE, Washington, DC 20507. In
the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is
received by mail within five days of the expiration of the applicable filing period. See 29
C.F.R. § 1614.604. The request or opposition must also include proof of service on the other
party.

Failure to file within the time period will result in dismissal of your request for reconsideration
as untimely, unless extenuating circumstances prevented the timely filing of the request. Any
supporting documentation must be submitted with your request for reconsideration. The
Commission will consider requests for reconsideration filed after the deadline only in very
limited circumstances. See 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court within
ninety (90) calendar days from the date that you receive this decision. If you file a civil
action, you must name as the defendant in the complaint the person who is the official Agency
head or department head, identifying that person by his or her full name and official title.
Failure to do so may result in the dismissal of your case in court. "Agency" or "department"
means the national organization, and not the local office, facility or department in which you
work. If you file a request to reconsider and also file a civil action, filing a civil action will
terminate the administrative processing of your complaint.

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may
request permission from the court to proceed with the civil action without paying these fees or
costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may
request the court to appoint an attorney for you. You must submit the requests for waiver of
court costs or appointment of an attorney directly to the court, not the Commission. The court
has the sole discretion to grant or deny these types of requests. Such requests do not alter the

11                                          0120151180

time limits for filing a civil action (please read the paragraph titled Complainant's Right to File
a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations


**APR 2 8 2017**
Date

12                                      0120151180

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.  I certify that this decision was mailed to the following recipients on the date below:

Donald Haynes
32 Lawrence Pl
Chestnut Ridge, NY  10977

Rachelle S. Young, Esq.
815 Connecticut Ave  NW  #720
Washington, DC  20006

U.S. Department of Homeland Security
Office for Civil Rights and Civil Liberties
245 Murray Ln., SW  Bldg. 410
Mail Stop 0191
Washington, DC  20528

Director, Office of Civil Rights and Liberties (TSA-6)
Transportation Security Administration
601 South 12th Street
Arlington, VA  20598-6006


__APR 2 8 2017__
Date


Compliance and Control Division